IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| TINA M. BOGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:07-CV-171 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil action seeks judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claims for benefits under Title II of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 15] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 10] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff applied for disability insurance benefits *pro se* in May 2006, claiming to be disabled by problems with her left extremities secondary to cerebral palsy. [Tr. 44, 62]. She alleged a disability onset date of July 1, 2004. [Tr. 44]. The application was denied

initially and on reconsideration.[1]

Still unrepresented by counsel, plaintiff in October 2006 requested a hearing before an Administrative Law Judge ("ALJ"). She referenced the existence of additional medical evidence from "Dr. Joanne Iven" of Hawkins Medical Center and expressed the desire to "submit such evidence" of her purportedly deteriorating health. [Tr. 37].

In January 2007, however, plaintiff signed and submitted the Commissioner's form, "Waiver of Your Right to Personal Appearance Before an Administrative Law Judge." [Tr. 38]. Claimants completing such waivers are required to affirm the following:

> I have been advised of my right to appear in person before an Administrative Law Judge. *I understand that my personal appearance before an Administrative Law Judge would provide me with the opportunity to present written evidence, my testimony, and the testimony of other witnesses. I understand that this opportunity to be seen and heard could be helpful to the Administrative Law Judge in making a decision.*
>
> Although my right to a personal appearance before an Administrative Law Judge has been explained to me, I do not want to appear in person. I want to have my case decided on the written evidence. . . .
>
> . . .
>
> If I change my mind and decide to request a personal appearance before the Administrative Law Judge, I understand that I should make this request to the Hearing Office <u>before</u> the decision of the Administrative Law Judge is mailed to me.

---

[1] Plaintiff filed a prior application in January 2003. [Tr. 40]. The present record indicates that plaintiff did not appeal that claim beyond the first level of denial. [Tr. 21, 24-28].

> I understand that I have a right to be represented and that if I need representation, the Social Security office or hearing office can give me a list of legal referral and service organizations to assist me in locating a representative.

[Tr. 38] (underlining in original, italics added). In addition to her signed acknowledgment, plaintiff wrote that she was waiving her right to appear, "Because unless it's really nessasary [sic] I don't want to have to appear before a judge. I'd hoped to resolve this with out [sic] doing so." [Tr. 38].

On February 12, 2007, the ALJ issued a decision denying benefits. The ALJ first noted that plaintiff "knowingly and voluntarily waived in writing the right to personally appear and testify at a hearing[.]" [Tr. 14]. He also observed that plaintiff "is not represented by an attorney or other representative and despite being advised of her right to such representation she chose to proceed without a representative." [Tr. 18].

Secondary to a review and discussion of the administrative record, the ALJ determined that plaintiff suffers from the "severe" impairment of cerebral palsy, but that in plaintiff's case the impairment did not meet or equal any impairment listed by the Commissioner. [Tr. 16]. The ALJ concluded that plaintiff retained the residual functional capacity to return to her past relevant work as a store clerk. [Tr. 19].

Plaintiff then obtained an attorney [Tr. 10] and sought review from the Commissioner's Appeals Council. Review was denied on May 25, 2007, notwithstanding the submission of eight pages of additional medical records attributed to "Dr. Joanne Irvin." [Tr. 5-6, 9, 170-78]. The ALJ's ruling then became the Commissioner's final decision. *See*

20 C.F.R. § 404.981. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

II.

*Plaintiff's Background and Testimony*

Plaintiff was born in 1962. She reports an eleventh grade education. [Tr. 66]. Her past relevant employment, through 2004, is as a restaurant assistant and a store attendant. [Tr. 50, 62-63]. She has told the Commissioner, "I can't do very much walking or standing due to the cerebral palsy and how it has affected my feet. [I can't] do any lifting or carrying using the left hand." [Tr. 62]. At her consultative physical examination, plaintiff "elect[ed] to give no information" regarding her typical daily activities. [Tr. 157].

III.

*Relevant Medical Evidence and Opinions*

A. Evidence Before the ALJ

As early as 1995, plaintiff was diagnosed with a "claw toe type deformity" of the left fifth toe. [Tr. 114]. A lesion on the left first toe was noted in 2000. [Tr. 109]. Plaintiff underwent left foot surgery in 2000 and discontinued treatment shortly thereafter. [Tr. 108].

In 1999, Dr. James Boss noted "a spastic gait with her left foot striking in a position of the forefoot striking before the heel. Once the foot is on the ground, the forefoot seems to be fairly well balanced on the ground. . . . Her toes do tend to curl." [Tr. 136]. In

4

March 1999, Dr. Boss performed surgery to lengthen the left Achilles tendon. [Tr. 115]. At her last appointment in June 1999, Dr. Boss described the tendon surgery as "very successful" but still noted "marked deformity of the forefoot with curling of her toes[.]" [Tr. 122]. Dr. Boss released plaintiff to return to work. [Tr. 121].

Plaintiff presented to podiatrist Steven Wadsworth in December 2003 and April 2004 with complaints of left foot pain. [Tr. 144]. She also sought emergency room treatment during that same period. [Tr. 144-55]. Dr. Wadsworth observed limited foot mobility and difficulty with ambulation. [Tr. 144]. He recommended possible surgery, but there is no indication that plaintiff pursued that option. [Tr. 144].

Dr. Wayne Page performed a consultative physical examination in July 2006. Although plaintiff told the Commissioner in 2003, "I cannot hold anything in my left hand *for very long* because the hand will begin to cramp" [Tr. 51] (emphasis added), she told Dr. Page that she "has *never* had use of the left hand." [Tr. 156] (emphasis added). Plaintiff further stated that "two years ago a podiatrist told her she should quit work because of the deformities of the ankle." [Tr. 156]. The court presumes that this reference is to Dr. Wadsworth, as his is the only podiatrist treatment documented by the administrative record for that time period. Dr. Wadsworth's notes reflect no recommendation regarding discontinuation of employment. [Tr. 144].

Plaintiff "elect[ed] to give no information" to Dr. Page regarding her activities of daily living, and she was described as "vague about past alcohol use." [Tr. 156-57]. She

5

reported that "she has no problems walking in the mall, but is unsure how far she can walk. She reports she can carry 30 pounds in 20 feet without difficulty." [Tr. 157].

Examination was noteworthy for abnormal flexion of the left wrist and inversion of the left ankle. [Tr. 158]. There was deviation of the left first and fifth toes, "no purposeful movement of the left hand," decreased muscle mass in both left extremities, and left ankle fusion in the neutral position. [Tr. 158-59]. Dr. Page nonetheless observed "no difficulty getting up and on the exam table or up from a chair." [Tr. 158]. Mobility was "normal," and gait was "near normal without any assistive devices used or indicated." [Tr. 158].

Dr. Page's ultimate diagnosis was "[c]erebral palsy with left foot, ankle, hand, and wrist defected." [Tr. 160]. He concluded that plaintiff

> retains the capacity to occasionally lift and/or carry for up to one-third of an eight-hour workday a maximum of 20 pounds, frequently lift and/or carry from one-third to two-thirds of an eight-hour workday a maximum of 10 pounds, stand and/or walk with normal breaks with no restrictions, and sit with normal breaks with no restriction. The examinee has other impairment-related limitations that being the lack of use of the left hand. She therefore could not perform activities that would require bilateral hand use. She is able to use left upper extremity for carrying items.

[Tr. 160].

Nonexamining Dr. Marvin Cohn then generated a Physical RFC Assessment. Dr. Cohn opined that plaintiff could work at the light level of exertion limited by: occasional pushing and pulling with the left arm; occasional postural limitations; no climbing of ladders, ropes, or scaffolds; occasional manipulative limitations with no handling or fingering with

6

the left hand; and restricted exposure to hazards. [Tr. 163-66].

B. Appeals Council Evidence

Plaintiff submitted documentation of three 2006 visits (September, October, and December) to Rural Health Services Consortium, Inc. [Tr. 171-78]. The individual provider's signature is illegible (as are most of the treatment notes), but an attached x-ray report indicates that plaintiff was under the care of nurse practitioner Joanne Irvin. [Tr. 178].

At the September appointment, plaintiff reported headaches which had "until recently" been relieved by over-the-counter medication. [Tr. 173-75]. Plaintiff also complained of hip pain. [Tr. 173]. A slight limp of the left leg was observed. [Tr. 173].

At the October appointment, plaintiff reported that her hip pain was reduced by use of the medication Ultram. [Tr. 172]. At the December appointment, plaintiff reported that medication was relieving both her hip pain and her headaches. [Tr. 171]. Plaintiff's additional evidence reflects no further treatment.

IV.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co.*

*v. NLRB*, 305 U.S. 197, 229 (1938)).

A claimant is entitled to disability insurance payments under the Social Security Act if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

8

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to defendant at step five. *Id*.

V.

*Analysis*

A. Listed Impairment

Plaintiff first argues that she should have been found disabled at step three of the ALJ's sequential evaluation. She contends that her impairment satisfies the Commissioner's cerebral palsy listing 11.07D. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.07D. That listing requires that a claimant prove cerebral palsy with "[d]isorganization of motor function as described in [listing] 11.04B." Listing 11.04B in turn requires, "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." Listing 11.00C in turn requires, "Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances . . . which occur singly or in various combination[.]"[2]

---

[2] Paresis is "slight or incomplete paralysis." *Dorland's Illustrated Medical Dictionary* 1324 (29th ed. 2000). Ataxia is "failure of muscular coordination" or "irregularity of muscular action."
(continued...)

The court cannot agree that plaintiff meets listing 11.07D's "two extremeties" requirement. Assuming, without deciding, that her left hand difficulties are "significant and persistent disorganization of motor function," there is substantial evidence that the left foot problems do not rise to that same level. Plaintiff told Dr. Page that she has no problems walking in the mall. She exhibited "no difficulty getting up and on the exam table or up from a chair," her mobility was deemed "normal," and her gait was "near normal without any assistive devices used or indicated." Dr. Page opined that plaintiff can "stand and/or walk with normal breaks with no restrictions[.]" Although Dr. Boss previously noted "marked deformity of the forefoot," he nonetheless released plaintiff to return to work. There is no evidence that plaintiff requires any assistive device for walking. Substantial evidence therefore supports the conclusion that plaintiff does not suffer "[s]ignificant and persistent disorganization of motor function" in a second extremity, as required by listing 11.07D.

### B. Past Relevant Work

Plaintiff next argues that the ALJ erred in concluding that she could return to her past relevant work. Specifically, plaintiff cites a July 2006 comment by an unidentified agent of the Commissioner who wrote, "We realize that your condition keeps you from doing any of your past work." [Tr. 32]. The court cannot conclude that the ALJ was bound by this prior statement under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). *Drummond* applies only to prior *final* decisions of the Commissioner, *see id.* at 842,

---

[2](...continued)
*Id.* at 165.

and the comment presently at issue was appended to the first administrative denial in this case, which certainly was not a final decision. The ALJ's RFC conclusions were a reasonable synthesis of the minimal objective evidence before him and will not be reversed. As is his role, the ALJ weighed the evidence in this case and adequately explained his decision. The substantial evidence standard of review permits that "zone of choice." *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).

### C. Remaining Arguments

Plaintiff raises three other interrelated issues.

1. The evidence first submitted to the Appeals Council warrants remand under sentence six of 42 U.S.C. § 405(g).

2. The ALJ breached his heightened duty to develop the record in light of plaintiff's then-*pro se* status.

3. The ALJ should not have accepted the waiver of administrative hearing because it was "ineffective"and "at best equivocal."

### 1. Sentence Six

Sentence six of § 405(g) allows the court to "remand the case . . . but only upon a showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g) (emphasis added). Therefore, the court can remand pursuant to sentence six only if plaintiff shows that her evidence is new and material, and that there was good cause for not presenting it in the prior proceeding. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Plaintiff bears the burden of proof on these issues. *Sizemore v. Sec'y of Health*

*& Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

Assuming that plaintiff could satisfy the newness and good cause elements of sentence six, she would nonetheless fail on the issue of materiality. To show materiality, plaintiff "must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* The present evidence does not demonstrate that "reasonable probability."

To the extent that the late-submitted records contain the nurse practitioner's observation of a slight limp, there was already ample evidence before the ALJ that plaintiff walks with a limp. Cumulative evidence is not "material." *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990). Further, the nurse practitioner's evidence indicates that plaintiff's newly-reported complaints (hip pain and headaches) both responded to medication. The evidence in no way indicates that either condition satisfied the twelve-month duration requirement of 42 U.S.C. § 423(d)(1)(A). For these reasons, plaintiff has not met her burden of proof under sentence six.

## 2. Development of the Record

An ALJ may be under a special duty to more fully develop the record in cases where a claimant is not represented by an attorney. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). "There are a few special circumstances - when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures - where the ALJ has a special duty to develop the

record." *Lambdin v. Comm'r, Soc. Sec. Admin.*, 62 F. App'x 623, 625 (6th Cir. 2003). However, "[w]hile the absence of counsel might cause us to scrutinize the record with care, it alone is not a grounds for reversal or remand." *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981).

For purposes of the present motions, the court will adopt plaintiff's position that the ALJ was under a heightened duty to obtain and review nurse practitioner Irvin's records. In her October 2006 "Disability Report - Appeal," plaintiff thrice referenced appointments with "Joanne Iven," in September, October, and December 2006 for treatment of left hip problems. [Tr. 99-100, 104]. "Dr. Iven's" name and address are also present in plaintiff's hearing request. [Tr. 37]. The Commissioner was therefore made aware of the existence of those records.[3]

Nonetheless, the failure to obtain Ms. Irvin's file did not result in "clear prejudice or unfairness" such as to justify remand. *See Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971). The court has already reviewed those records and found them to be immaterial. Remand would therefore be a waste of resources. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

---

[3] The court presumes that reference by plaintiff and her counsel to "Dr. Iven" or "Dr. Joanne Irvin" are in fact references to nurse practitioner Joanne Irvin.

3. <u>Waiver</u>

The waiver of hearing form signed by plaintiff amply counsels of the risks associated with declining to appear. The court has reviewed plaintiff's responses to various queries from the Commissioner and sees no indication that plaintiff is not able to understand written communications. The court further notes:

> 1. Dr. Page assessed "normal intellectual functioning." [Tr. 158].
>
> 2. On at least two occasions, the Social Security Administration provided information to plaintiff regarding the ease of obtaining affordable Social Security counsel. [Tr. 25, 30].
>
> 3. On at least three occasions, the Social Security Administration provided its phone numbers and local office addresses as resources to plaintiff, "If you have any questions . . ." [Tr. 25, 30, 34].
>
> 4. Prior to the 1999 surgery, Dr. Boss wrote that plaintiff understood his surgical risk/benefit explanation, and his office notes further reflect that plaintiff called in three days later to ask additional questions. [Tr. 135]. This further evidences that plaintiff is capable of comprehending instructions and obtaining further information when needed.

The court accordingly finds that plaintiff knowingly and effectively waived her right to an administrative hearing.

Further, plaintiff offers no persuasive argument as to how she would have actually benefitted from a hearing. In her briefing, she argues only that she would have had the opportunity to present her additional medical evidence. Again, the court has reviewed those records and finds them immaterial. Strikingly, plaintiff does not argue that she would have somehow offered testimony beneficial to her claim. That omission is consistent with

plaintiff's refusal to disclose her daily activities to the consultative examiner.

VI.

*Conclusion*

The Commissioner's final decision was supported by substantial evidence and must therefore be affirmed. An order consistent with this opinion will be entered.


ENTER:


       s/ Leon Jordan
United States District Judge